UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:10-cv-20383-JLK

NATHALY GARCIA GARCIA, as Personal Representative for THE ESTATE OF CARLOS EDUARDO FRISNEDA ALVAREZ, DECEASED, on Behalf Of the Estate and All Potential Beneficiaries and/or Survivors,

    Plaintiff,

vs.

WELLS FARGO BANK NORTHWEST NA TRUSTEE, a foreign corporate fiduciary; CESSNA AIRCRAFT COMPANY, a foreign corporation; HONEYWELL AEROSPACE, a division of HONEYWELL INTERNATIONAL INC., a Delaware corporation; AVION-JET CENTER, LLC, a Florida Limited Liability company,

    Defendants.
_____/

## ORDER GRANTING WELLS FARGO'S MOTION FOR SUMMARY JUDGMENT FOR LACK OF PERSONAL JURISDICTION

On February 18, 2008, a Cessna 650 Citation crashed near Caico Seco, Anzoategui, Venezuela, killing all three men aboard. Aboard the Cessna were the pilot, Captain Nunez; the co-pilot, Carlos Eduardo Frisneda Alvarez; and a passenger, Nelson Caballos. Mr. Caballos was also the owner of a corporation, MAW.ZC, LLC, a foreign corporation which had an interest in the plane. None of the deceased were citizens of Florida. Nonetheless, this lawsuit was filed in the Southern District of Florida. The most recent complaint, Plaintiff's Third Amended Complaint (DE #70-1), seeks recovery on behalf of the estate of the co-pilot, Mr. Alvarez.

Now before the Court is Defendant Wells Fargo's Motion for Summary Judgment (DE

#88), filed April 19, 2011. Wells Fargo moves for summary judgment on its behalf on two discrete bases: 1) this Court's alleged lack of personal jurisdiction; and 2) the alleged preemptive effect of the Federal Aviation Act as to any finding of liability on the part of Wells Fargo.[1]

Having held oral argument on July 29, 2011 and otherwise considered the parties' arguments, the Court finds that it lacks personal jurisdiction over Defendant Wells Fargo for the reasons stated below.

### I. Procedural Background

Plaintiff, as the Personal Representative of the Estate of Mr. Alvarez, filed this action against numerous defendants on February 5, 2010. As is common in cases involving airplane crashes, the main dispute relates to the cause of the crash. In that regard, Plaintiff has sued the maker of the aircraft, Cessna Aircraft Company, as well as the manufacturer of certain aspects of the aircraft, including its engines and its autopilot system. Additionally, Plaintiff has filed suit against Defendant Wells Fargo, alleging that "[a]t all times material, Wells Fargo[] owned, leased, managed, maintained, operated and/or was the entity in control of the subject aircraft." (DE #70-1 ¶28). Plaintiff therefore alleges that Wells Fargo had a duty to ensure both proper maintenance and proper operation of the plane, and that it breached those duties.

Wells Fargo moved to dismiss (DE #26) Plaintiff's Amended Complaint on April 29, 2010. Therein, Wells Fargo argued that the Court lacked personal jurisdiction over it, and that the Federal Aviation Act preempted any claim that could be raised against Wells Fargo by Plaintiff. By Order (DE #45) dated September 16, 2010, the Court denied Defendant's Motion to Dismiss without prejudice, giving it leave to raise those contentions anew at the summary judgment stage. Defendant filed its Motion for Summary Judgment seven months later.

---

[1] This matter has been fully briefed by the parties. Plaintiff filed its Response (DE #93) on May 13, 2011, to which Defendant filed its Reply (DE #104) on May 31, 2011. As such, this matter is ripe for determination.

2

## II.     Factual Background

Most relevant to the pending Motion for Summary Judgment now before the Court is the legal relationship between Wells Fargo Bank Northwest NA and MAW.ZC, LLC, and the control exercised by Wells Fargo over the subject airplane.

Wells Fargo Bank Northwest NA operates a trust department, whose business it is to establish trusts to assist foreign citizens in registering their aircraft with the Federal Aviation Administration. Under federal law, a foreign national cannot register aircraft in the United States. As such, Wells Fargo operates as a "passive" trustee on the behalf of foreign citizens. Its operation is based in Salt Lake City, Utah. While there are other operations of the corporate trust department under the Wells Fargo umbrella, Wells Fargo Northwest is a separate legal entity with offices only in Utah. Wells Fargo Northwest is neither incorporated nor licensed to do business in the State of Florida; nor does it have any offices or employees in Florida. In its capacity as trustee, Wells Fargo provides services for over 5,100 aircraft worldwide. The record evidence is unclear on where each of these aircraft is located specifically, although Wells Fargo concedes that some may be located in Florida. As part of its trust agreements with foreign nationals, Wells Fargo alleges that it cedes all operational control of its airplanes to the lessee for whom the trust is established. Thus, Wells Fargo itself operates solely as an owner trustee.

In this instance, Wells Fargo operated as a trustee on behalf of MAW.ZC, LLC, a foreign corporation. The relationship between Wells Fargo and MAW was defined by two agreements: a Trust Agreement and an Aircraft Operating Agreement. Under the former, after title to the subject aircraft was conveyed by MAW to Wells Fargo, Wells Fargo covenanted that "it will not manage, control, possess, use, sell, lease, dispose of or otherwise deal with the Aircraft ..." (DE #93-7, Trust Agmnt. § 3.15). Wells Fargo further promised that it would take certain actions in

3

securing FAA registration in its own name on behalf of MAW. (*Id.*, Trust Agmnt. §4.01).

The parties' second agreement, the Aircraft Operating Agreement, controlled the use of the subject aircraft. Although undated, the Aircraft Operating Agreement transferred the "exclusive license to possess, use, and operate" the subject aircraft to MAW. (DE #88-6, Aircraft Op. Agmnt. §§1, 4). Thereunder, MAW was liable for any and all payments due on the airplane, including taxes, governmental charges, assessments, and licensing fees. *Id.* at §5. Furthermore, MAW promised to "at its own cost and expense, ... service, repair, maintain and overhaul" the subject aircraft. *Id.* at §6. Nonetheless, by the terms of the Aircraft Operating Agreement, "[l]egal title to the Aircraft shall remain in [Wells Fargo] at all times."

The record establishes that Wells Fargo, although perhaps not the purchaser of the subject airplane, was the registered owner of the subject aircraft at all relevant times. According to the Bill of Sale (DE# 93-2) signed on May 3, 2007, Jet Sales, Inc. sold the subject plane, a 1987 Cessna Citation 650, U.S. registration N385EM, to Wells Fargo Bank Northwest, NA.[2] Wells did not itself contribute the funds to purchase the subject aircraft, nor did it ever utilize the aircraft for its own purposes. For some time after the sale of the subject aircraft, it remained in Florida for maintenance.[3] Furthermore, the aircraft was returned to Florida on several occasions for repairs.

### III. Legal Standard for Summary Judgment

Summary judgment is appropriate where the pleadings and supporting materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to

---

[2] This sale was the subject of a state tax assessment, in which the administrative law judge considered whether Wells Fargo was the purchaser of the airplane.

[3] Plaintiff contends that Wells Fargo "permitted [the aircraft] to remain in the State of Florida to undergo a series of repairs" (DE #93 at 8), although there is no evidence upon review of the invoices (DE #93-5) of any such explicit permission on the part of Wells Fargo.

judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the record as a whole could not lead a rational fact-finder to find for the nonmoving party, there is no genuine issue of fact for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party bears the burden of pointing to the part of the record that shows the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991) (holding that the nonmoving party must "come forward with significant, probative evidence demonstrating the existence of a triable issue of fact.").

On a motion for summary judgment, the court must view the evidence and resolve all inferences in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, a mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment. *See id.* at 252. If the evidence offered by the nonmoving party is merely colorable or is not significantly probative, summary judgment is proper. *See id.* at 249–50.

**IV.   Discussion**

Defendant Wells Fargo now seeks summary judgment on its own behalf on two distinct bases: personal jurisdiction, and the Federal Aviation Act. Because the Court finds that it lacks personal jurisdiction over Defendant Wells Fargo, it declines to consider the second basis for Defendant's Motion.

### A. Personal Jurisdiction

In the context of a motion to dismiss where personal jurisdiction is questioned, the plaintiff bears the *prima facie* burden of proof. *See Bracewell v. Nicholson Air Servs., Inc.*, 748 F.2d 1499, 1504 (5th Cir. 1984) ("If the defendant raises a question of personal jurisdiction and the district court elects to decide the question solely on the basis of the pleadings and affidavits, it must accept as true those allegations of the complaint which are not controverted by defendant's evidence and deny the motion to dismiss if the plaintiff presents a prima facie case of jurisdiction"). However, in the context of summary judgment, "it is the moving party's burden to establish that there is no genuine issue of material fact, and an entitlement to prevail as a matter of law." *Hudson Drydocks Inc. v. Wyatt Yachts Inc.*, 760 F.2d 1144, 1146 (11th Cir. 1985) (citing *Thrasher v. State Farm Fire & Cas. Co.*, 734 F.2d 637, 638-39 (11th Cir. 1984)). Even when considering the evidence in the light most favorable to Plaintiff as it must do, the Court finds that it has no personal jurisdiction over Defendant Wells Fargo under these circumstances.

As must be done when considering any challenge to personal jurisdiction sounding in diversity jurisdiction, the Court must consider whether the plaintiff's allegations satisfy the two-step inquiry of Florida's long-arm statute and constitutional notions of due process. *See Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990); *Cable/Home Commc'n Corp. v. Network Prod.*, 902 F.2d 829, 855 (11th Cir. 1990); *Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co. Ltd.*, 752 So. 2d 582 (Fla. 2000).

The first step of this inquiry necessarily deals with Section 48.193, Florida Statutes, which authorizes the assertion of jurisdiction over foreign individuals. Plaintiff relies upon two subsections, (1)(a) and (2). The former provides as follows:

> 1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
>
> (a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state, Fla. Stat. § 48.193(1)(a).

The latter, subsection (2), states that "[a] defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity." Fla. Stat. § 48.193(2). Thus, in seeking to apply Florida's long-arm statute, Plaintiff contends Wells Fargo's trustee services constitute both the operation of a business under subsection (1)(a) and "substantial and not isolated activity" under subsection (2).

In support, Plaintiff states that Wells Fargo's business has significant involvement with Florida. For example, Plaintiff argues that "Wells Fargo provides trustee services to clients in Florida; provides trustee services for aircraft purchases in the State of Florida and does not decline its services based on Florida connections." (DE #93 at 19-20). Furthermore, "Wells Fargo is the current owner and trustee of over 5,000 aircraft, [some of] which it permits to operate in the State of Florida." *Id.* at 20. More particularly, Plaintiff points out that Wells Fargo had a specific involvement in Florida related to the subject airplane, including its sale, taxation by the state,[4] and certain repairs. There is no dispute that the aircraft at such times and on certain others entered Florida airspace. Moreover, at least one letter in the record

---

[4] Plaintiff further contends that Wells Fargo's contestation of the Florida tax assessment constitutes purposeful availment "of the benefits and protections of Florida law. (DE #93 at 20-21). The Court, however, rejects this contention. Being haled into administrative proceedings to contest a tax assessment cannot, as a matter of law, constitute purposeful availment within the context of personal jurisdiction.

demonstrates that Wells Fargo had some involvement in the appointment of the subject aircraft's pilot, Captain Alexander Nunez. (DE #93-13).

Defendant contends that none of these facts satisfy the requirements of either Section 48.193 or constitutional notions of due process. Instead, Wells Fargo states that it is a national banking association with its principal place of business in Utah, neither incorporated nor licensed to do business in the State of Florida, without any offices or employees in Florida. Moreover, it argues that it is merely "a passive trustee such that all operational control of the aircraft is in the hands of the operator or the lessee ..." (DE #88 ¶10). Furthermore, it disputes whether it was the actual purchaser of the airplane, stating that "it does not seek to or actually purchase aircraft, does not pay the purchase price for the aircraft, does not fly the aircraft, does not possess or operate the aircraft and often times never sees the aircraft ..." *Id.* ¶ 12.

The undisputed facts demonstrate that if Wells Fargo had any connection with Florida, it was purely tangential and fortuitous. For instance, Plaintiff has put forth no evidence which indicates that any of Wells Fargo's 5,000-plus planes were under Wells Fargo's control at the time they may have crossed into Florida airspace. Instead, Plaintiff simply refers to the number of planes as dispositive of Wells Fargo's involvement. In the absence of actual evidence, no such assumption is proper.

Nor has Plaintiff provided any evidence that Wells Fargo affirmatively reaches out to clients in Florida. Although Wells Fargo's entered into a trust agreement with a foreign corporation relating to an aircraft purchased and sometimes maintained in Florida, such a one-time action, without more pervasive proof, neither satisfies subsections (1)(a) nor (2). The evidence is unrefuted that Wells Fargo has no offices in Florida; no employees in Florida; and does not solicit business in Florida. The sole actual basis that Plaintiff offers in support of this

8

Court's personal jurisdiction over Defendant is the purchase of the aircraft from a Florida business, notwithstanding that it is not clear that Wells Fargo was the actual purchaser under the terms of that Bill of Sale. Such a limited action, without evidence of more, cannot constitute a sufficient basis for exercise of Florida's long-arm statute.

Even if the Court were to find that Plaintiff had satisfied Section 48.193, Florida Statutes, Plaintiff would nonetheless have failed to establish that constitutional notions of due process would not be abrogated by the exercise of jurisdiction over Wells Fargo here. "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." *Burger King v. Rudzewicz*, 471 U.S. 462 (1985) (internal quotation and citation omitted). Therefore, to satisfy due process, Plaintiff must demonstrate both that Wells Fargo has "purposefully directed" its activities at Florida, *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (184), and that exercise of personal jurisdiction would not offend "traditional notions of fair play and substantial justice." *Madara v. Hall*, 916 F.2d 1510, 1515-16 (11th Cir. 1990). Plaintiff has made no such showing here.

In support of its due process argument, Plaintiff cites *Northwestern Aircraft Capital Corp. v. Stewart*, 842 So. 2d 190, 192 (Fla. 5th DCA), contending similar facts to those at issue here. In that case, in the context of a motion to dismiss, the Fifth District Court of Appeals affirmed that the complaint alleged sufficient jurisdictional facts to bring the matter within Florida's jurisdiction. Specifically, six people—two pilots and four passengers—flew from Orlando International Airport, bound for Dallas, Texas. Mid-flight, a system malfunctioned in the plane, depressurizing the cabin and killing its occupants. Nonetheless, because the airplane was on auto-pilot, it did not immediately crash. *Id.* at 192. Eventually, after exhausting its fuel

supply, it crashed in South Dakota. On behalf of the deceased, certain individuals filed a wrongful death suit in Florida. The trial court, considering the plaintiff's allegations and the affidavits and depositions of the parties, found that the plaintiff had shown specific jurisdiction under Section 48.193(1) because of the defendant's solicitation and service activities in Florida. *Id.* at 194. Specifically, the trial court found evidence that the defendant advertised and solicited business in Florida; offered aircraft for sale in Florida through various in-state publications; and affirmatively held themselves out as a charter company operating out of Florida. *Id.* Moreover, on considering general jurisdiction under Section 48.193(2), the trial court found numerous instances of intra-state activity. For example, the defendants had operated 116 charter flights into and out of Florida for the three years prior to the crash; they had operated the same plane on numerous flights out of Florida; the plaintiff had adduced significant evidence that defendants had conducted substantial business in Florida. Thus, after considering the constitutional protections of due process, the trial court found that it had personal jurisdiction over the defendants. The Fifth District Court of Appeals concurred.

*Stewart* is easily distinguished from the circumstances at issue here. Most obviously, the aircraft in question did not depart from Florida prior to its eventual crash in Venezuela. Instead, it had only been in Florida intermittently and for limited periods of time. None of the decedents in the instant case were Florida residents, whereas presumably at least some of those aboard the plane in *Stewart* were. More importantly, though, Plaintiff has provided no evidence of the extent of Wells Fargo's business in Florida. Instead, it contends that because Defendant Wells Fargo holds some 5,100 planes in trust, at least some of those must operate in Florida. In support of that contention, one of Defendant Wells Fargo's vice-presidents conceded at deposition that some of Wells Fargo's planes may operate in Florida. (Dep. J. Croasmun, 11:7-14). However,

Plaintiff has produced no evidence regarding the control exercised by Wells Fargo over those planes. Nor, unlike *Stewart,* has Plaintiff produced any evidence demonstrating Wells Fargo's involvement in soliciting or advertising its business here.

Instead, upon considering the entirety of the evidence adduced by the parties, the Court cannot but determine that the involvement of Wells Fargo within the state of Florida was fortuitous and does not qualify as purposeful availment within the meaning of due process jurisprudence. Particularly, in regards to the requirement of "fair play and substantial justice," the Court finds that the factors identified by the *Woodson* Court do not justify jurisdiction here. *Cf. WorldWide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 780 (1980) (listing five factors to be considered). In that case, the Court considered the following five factors in determining whether jurisdiction was fair and proper: 1) burden on the defendant; 2) forum state's interest in adjudicating the dispute; 3) plaintiff's interest in obtaining convenient and effective relief; 4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and 5) the shared interest of the several States in furthering fundamental substantive social policies. *Id.*

Here, not one of the *Woodson* factors weighs in favor of Florida as the *locus* for adjudication of Plaintiff's claims against Defendant Wells Fargo. Plaintiff has failed to provide any evidence of a business presence on the part of Wells Fargo in Florida, aside from the possible use of airspace by some of the aircraft under Wells Fargo's trustee ownership. As such, requiring Wells Fargo to litigate here is unduly burdensome. More substantially, though, Florida has little interest in adjudicating a dispute that involves neither Florida citizens nor Florida laws. The airplane crash in question occurred in Venezuela, and the only tie that Florida has to the subject airplane itself is that it was the place in which the plane was sold and occasionally

11

serviced. Such cannot be sufficient to confer jurisdiction. Any other finding would vitiate personal jurisdiction, as courts could latch upon any random event as a basis for jurisdiction. Finally, where, as here, an accident occurs in a foreign jurisdiction and involves no American citizens, states likely have little interest in assuring either the most efficient resolution of the underlying controversy or in furthering fundamental social polices.

Standing alone, the in-state sale and occasional maintenance of an aircraft may be insufficient to confer jurisdiction on the courts of this state. When considered in the context of Wells Fargo's passive ownership of the subject airplane and lack of involvement or solicitation in Florida, such sale and maintenance is certainly an insufficient predicate for jurisdiction. Accordingly, given that there is no genuine issue of material fact that would make the exercise of Florida's long-arm statute appropriate or would otherwise satisfy the constitutional requirements of due process, the Court finds that it is improper to exercise personal jurisdiction over Defendant Wells Fargo under these circumstances. Defendant's Motion for Summary Judgment must therefore be granted.

### B. Federal Aviation Act Preemption

Having found that this Court lacks personal jurisdiction over Defendant Wells Fargo, the Court declines to consider Defendant's argument regarding the preemptive effect of the Federal Aviation Act under these circumstances.

### V. Conclusion

Accordingly, after careful consideration and the Court being otherwise fully advised, it is hereby **ORDERED, ADJUDGED,** and **DECREED** that:

1. Defendant Wells Fargo's Motion for Summary Judgment (DE #88) be, and the same is hereby, **GRANTED.**

2. As to Defendant Wells Fargo, Plaintiff's Third Amended Complaint (DE #70-1) is **DISMISSED** for lack of personal jurisdiction.

**DONE AND ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse in Miami, Florida, this 5th day of August, 2011.

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE

Cc:

*Counsel for Plaintiff*
**Aaron Samuel Podhurst**
Podhurst Orseck Josefsberg et al
City National Bank Building
25 W Flagler Street
Suite 800
Miami, FL 33130-1780
305-358-2800
Fax: 305-358-2382
Email: apodhurst@podhurst.com

**Lea P Valdivia**
Podhurst Orseck, P.A.
25 West Flagler Street
Suite 800
Miami, FL 33130
3057894209
Email: lvaldivia@podhurst.com

**Alexander Rundlet**
Podhurst Orseck, P.A.
City National Bank Building
25 W Flagler Street
Suite 800
Miami, FL 33130-1780
305-358-2800
Fax: 305-358-2382
Email: arundlet@podhurst.com

**Ricardo M. Martinez-Cid**
Podhurst Orseck, P.A.
City National Bank Building
25 W Flagler Street
Suite 800
Miami, FL 33130-1780
305-358-2800
Fax: 305-358-2382
Email: rmcid@podhurst.com

*Counsel for Wells Fargo*
**Trenam Kemker**
101 E. Kennedy Blvd., Suite 2700
Tampa, FL 33602
(813) 223-7474
Email: gnader@trenam.com

**Jason Henry Baruch**
Trenam Kemker Scharf Barkin Frye O'Neill & Mullis
101 E Kennedy Boulevard
Suite 2700 PO Box 1102
Tampa, FL 33601-1102
813-223-7474
Fax: 813-229-6553
Email: jbaruch@trenam.com

*Counsel for Cessna Aircraft Company*
**Henry Morrison Knoblock**
Knoblock & Coxhead
7901 SW 67th Avenue
Suite 203
Miami, FL 33143
305-669-9655
Fax: 669-6169
Email: hank@kcfloridalaw.com

**Stephen Fraser Coxhead**
Knoblock & Coxhead
7901 SW 67th Avenue
Suite 203
Miami, FL 33143
305-669-9655
Fax: 669-6169
Email: Steve@kcfloridalaw.com

*Counsel for Honeywell Aerospace*
Thomas E Scott , Jr.
Cole Scott & Kissane
Dadeland Centre II Suite 1400
9150 S Dadeland Boulevard
Miami, FL 33156
305-350-5381
Fax: 305-373-2294
Email: thomas.scott@csklegal.com

**Kathryn Reddy**
Perkins Coie, LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Email: kreddy@perkinscoie.com

**V.L. Woolston**
Perkins Coie
1201 3rd Avenue
Suite 4800
Seattle, WA 98101-3099
206-359-8514
Fax: 359-9514
Email: vwoolston@perkinscoie.com

*Counsel for Avion-Jet Center, LLC*
Francis A. Anania
Anania Bandklayder Blackwell & Baumgarten
NationsBank Tower
100 SE 2nd Street
Suite 4300
Miami, FL 33131-2144
305-373-4900
Fax: 373-6914
Email: FAnania@anania-law.com